CITY OF NEW YORK, Plaintiff, *v.* JAMES J. MCCORMICK, Defendant.*

Supreme Court, New York County, May 19, 1932.

*Arthur J. W. Hilly, Corporation Counsel [Isaac F. Cohen* and *Harry L. Herzog* of counsel], for the plaintiff.

*Johnstone & Richter,* for the defendant.

FRANKENTHALER, J. This is a motion to vacate an attachment obtained by the plaintiff, the city of New York, on the theory that certain moneys received by the defendant, while he was deputy city clerk, belong to the plaintiff and are being wrongfully and unlawfully withheld from the latter. The attachment was issued upon affidavits stating that the defendant had testified in hearings before the joint legislative committee to investigate the affairs of the city of New York that he had received gratuities, tips and gifts from various persons for whom he had performed marriage ceremonies as deputy city clerk. The action is brought to recover the moneys thus obtained by the defendant.

It is conceded that the fee of two dollars required by section 11-a of the Domestic Relations Law to be paid to the city clerk for

the performance of a marriage ceremony was paid into the city treasury for each and every marriage performed by the defendant. The sole question presented by this motion is whether the gratuities, tips, gifts and voluntary contributions received by the defendant are the property of the city of New York. The question of whether the receipt of the moneys by the defendant was a violation of section 1826 of the Penal Law or of section 67 of the Public Officers Law is not involved on the present motion. Nor would it follow from a decision that the moneys received by the defendant are not the property of the plaintiff that they may be retained by the defendant as his own. It is possible that under section 67 of the Public Officers Law they may be recovered by those from whom the defendant received them.

The city of New York bases its claim that the moneys received by the defendant belong to the city upon the provisions of section 1550 of the Greater New York Charter, which reads as follows:

" § 1550. No officer of the city government, except the city marshals, shall have or receive to his own use any fees, perquisites or commissions or any percentage; but every such officer shall be paid by a fixed salary *and all fees, percentages, and commissions received by any such officer shall be the property of the city.* And every officer who shall receive any fees, perquisites, commissions, percentages, or other money which should be paid over to the city, shall, before he shall be entitled to receive any salary, make under oath a detailed return to the comptroller showing the amount of all such fees, commissions, percentages, perquisites and moneys received by him since the last preceding report, the person from whom received, and the reason for its payment, and shall produce the receipt of the chamberlain, showing the payment to him, by said officer, of the aggregate amount thereof. All sums received as above, or for licenses or permits, except as in this act otherwise expressly provided, shall be paid over weekly, without deduction by the officers or department receiving them, to the chamberlain, and a detailed return under oath shall at any time be made in such form as the comptroller shall prescribe, stating when and from whom, and for what use such moneys were received. No city officer who is paid a salary for his services from the city treasury shall receive to or for his own use *any fees, costs, allowances, perquisites of office, commissions, percentages, or moneys paid to him in his official capacity; but all fees, costs, allowances, perquisites, commissions, percentages, and moneys so paid or received by any such officer or person, shall be the property of the city* and shall be paid by him into the city treasury; and every such officer or person who shall receive any fees, perquisites, commissions, percentages, or other moneys which belong to the city, and should be so paid into the treasury, shall,

before he shall be entitled to receive or to be paid his salary, make under oath a detailed statement and return to the comptroller in such form as he may prescribe, showing the amount of all such moneys received by him since the last preceding statement and returns, and shall produce a receipt showing the payment of such sum into the treasury. The comptroller may require any such person or officer to make such statement and return to him, if it be not made as herein provided, and may examine any such officer or person under oath touching the amount of any fees, costs, allowances, perquisites, commissions, percentages, or moneys paid to or received by him in his official capacity." (Italics the court's.)

The city makes two contentions: (1) That the gratuities, tips, gifts and contributions received by the defendant are " perquisites " within the meaning of section 1550, and (2) that said moneys were moneys received by the defendant in his official capacity.

It is true that various definitions of the word " perquisite " are literally broad enough to include gratuities, gifts, tips or other voluntary contributions. Thus, " perquisite " has been defined as " a gain or profit incidentally made from employment in addition to regular salary or wages, *esp. one of a kind expected or promised* " (Webster New Internat. Dict.); as " any profit or pecuniary gain from service beyond the amount fixed as salary or wages; hence, any privilege or benefit *claimed as due* \* \* \* specif. in law: ' a fee that a person in office may lawfully receive for service rendered beyond the requirements of his official duties ' " (Funk & Wagnall New Standard Dict. of the English Language); as " emoluments or incidental profits *attaching* to an office or official position, beyond the salary or regular fees " (Black Law Dict.). (Italics the court's.) The italicized portions of the foregoing definitions indicate, however, that the word " perquisites " carries with it the idea that the incumbent of the office is entitled to demand the payment from the person making it, as something pertaining to or attaching to the office. This appears to have been the view of the court in *County of Lake* v. *Westerfield* (196 Ill. App. 432, at p. 439), where a definition of " perquisites " as including every payment to an officer " which comes to him *as such officer* " (Italics the court's) was approved.

In my opinion, the word " perquisite " in its natural meaning embraces only such moneys as the incumbent of an office is entitled to demand for performing any of the duties of the office and is not broad enough to embrace gratuities, tips, gifts or other voluntary contributions which he has no right to demand and the receipt of which depends entirely upon the good nature or kindly disposition of others. The purpose of section 1550 of the Greater New York Charter was to do away with the retention of fees and

other charges by city officers, to require such officers to be paid a fixed salary, and to provide for the payment into the city treasury of all fees and other charges received by such officers. There is nothing in section 1550 to indicate that it was intended to cover the subject of gratuities, tips, gifts and voluntary contributions made to city officers or to provide that such payments are to become the property of the city and to be reported to the comptroller. If the receipt of such moneys be unlawful, it is all the more unlikely that the interpretation contended for by the city is correct. It hardly seems probable that section 1550 was intended to require the reporting of moneys which the incumbent of the office had no right to receive, and to make them the property of the city, as perquisites of the office.

The claim that the payments received by the defendant are the property of the city as " moneys paid to him in his official capacity," in my opinion, must also be disposed of adversely to the city. It is true that the moneys would not have been received by the defendant had he not occupied the office of deputy city clerk. A distinction must, however, be drawn between moneys received because the recipient occupied an office and moneys received in his official capacity. It is my view that the words " moneys paid to * * * him in his official capacity " refer only to funds which the officer is entitled to demand for performing any duties of his office, and that they do not include gratuities, tips, gifts or voluntary contributions. The same observations as to the purpose of the statute which have been made above in connection with the interpretation of the word " perquisites " are equally applicable in construing the words " moneys paid to * * * him in his official capacity."

The motion to vacate the attachment is granted.